IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT FREECE,                        )
                                      )
                  Plaintiff,          )    Civil No. 04-1666-JE
                                      )
          v.                          )    OPINION AND ORDER
                                      )
CLACKAMAS COUNTY, DANIEL STEEVES,     )
KIM KLUSMANN, CITY OF WILSONVILLE,    )
FLOYD PEOPLES, CHARLES JACOBY,        )
and JOHN DOES 1-5,                    )
                                      )
                  Defendants.         )
_____ )


        David D. Park
        Elliott & Park
        Abernethy House
        0324 S.W. Abernethy Street
        Portland, OR 97239-4356
            Attorneys for Plaintiff


1 - OPINION AND ORDER

Edward S. McGlone III
Clackamas County Counsel
2051 Kaen Road
Oregon City, OR 97045
     Attorney for Defendants Clackamas County,
     Daniel Steeves, and Kim Klusmann

James P. Martin
Kari A. Furnanz
Hoffman, Hart & Wagner, LLP
20th Floor
1000 S.W. Broadway
Portland, OR 97205
     Attorneys for Defendants City of Wilsonville,
     Floyd Peoples, and Charles Jacoby

JELDERKS, Magistrate Judge:

Plaintiff Robert Ian Freece brings claims for civil rights violations, false imprisonment, and battery against defendants Clackamas County (the County), Sergeant Kim Klusmann, the City of Wilsonville (the City), Floyd Peoples, and Charles Jacoby.

Defendants move for summary judgment. Plaintiff moves for partial summary judgment on liability. I grant the City defendants' motion for summary judgment. I deny plaintiff's motion for partial summary judgment and the County defendants' motion for summary judgment.

### CITY DEFENDANTS' SUMMARY JUDGMENT MOTION

## I.  Background[1]

Defendant Floyd Peoples, the City's Operations Manager for Public Works, is responsible for park maintenance. The City Code

---

[1]     Statements in the Background are provided only to explain this court's rulings and are not otherwise relevant.

2 - OPINION AND ORDER

authorizes Peoples to enforce park rules, including the
prohibition on littering.

In early April 2004, Peoples learned that high school
students using the City's Memorial Park had been littering,
disrupting traffic flow, and speeding.  On April 9, 2004, Peoples
decided to observe the picnic area in Memorial Park where there
had been problems.  Peoples asked defendant Charles Jacoby, a
senior utility worker for the City, to stand by the gate at the
southern entrance to the park.

At about 11:20 that morning, Sean Sullivan[2], a senior at
Wilsonville High School, drove with plaintiff, who was also a
senior, and two other students, to the park on their lunch break.
Sullivan parked his car in Memorial Park's south lot, near some
picnic tables.  About 15 or 20 other students were also taking
their lunch break in the park.

At the picnic area, Peoples saw two persons littering and
asked them to pick up their trash.  They complied.  However, more
litter remained on the ground, mainly fast food wrappers and
cups.  Someone told Peoples that the occupants of a green car had
tossed their trash out a window.

Peoples radioed Jacoby to close the gate so Peoples could
ask those who were starting to leave the park to clean up any

---

[2]    Sullivan is the plaintiff in a companion case, <u>Sullivan
v. Clackamas County</u>, Civ. No. 04-1665-JE.

3 - OPINION AND ORDER

trash they might have left.  Based on his experience with high
school students in the park, Peoples thought that a short
conversation about manners for park use might help prevent future
littering and other problems such as speeding.

Jacoby closed the gate while Peoples stayed near the picnic
area.  Jacoby put a padlock through the gate's latch, but did not
completely close the padlock's mechanism.  After the occupants of
the green car had picked up their litter, Peoples told Jacoby to
reopen the gate.

A few minutes later, plaintiff and others were getting into
their cars and preparing to leave the park.  Because there was
still trash in the picnic area, Peoples radioed Jacoby and told
him to close the gate again and to tell those whose cars were
stopped at the gate to return and pick up their trash.  There is
no evidence that plaintiff, Sullivan, or the two other students
with them were responsible for any of the litter.

Jacoby closed the gate but did not padlock it, and conveyed
Peoples's instructions to those stopped at the gate.  Plaintiff
remembers Jacoby saying, "You guys aren't leaving, you guys
aren't leaving.  You can't just throw your trash." Freece Depo.
at 97.  Sullivan's car was the third car in line from the gate.

Several students left their cars and complained about the
closing of the gate.  When Jacoby insisted that the gate would
remain closed until the trash was picked up, some of the

students' complaints became heated and profane.  One student, described by plaintiff as "hot-headed," confronted Jacoby, telling him, "You have to let us go.  This is wrong.  . . .  I need to get back to class."  Freece Depo. at 96.

A student then pushed the gate open, forcing Jacoby aside in the process.  Kent Dahlgren, a Xerox employee taking his lunch break at the park, was a passenger in one of the cars behind the gate.  When Dahlgren saw what had happened to Jacoby, he left the car to help restore order and close the gate.

While the gate was open, the drivers of the first two cars in line drove through the gate and left the park.  One of the cars nearly ran over Dahlgren's foot as it went by.

When the first two cars left, Sullivan had moved his car very slightly past the gate.  Dahlgren started to close the gate again, and Sullivan was asked to back up.  Sullivan complied.

At some point plaintiff got out of Sullivan's car in an attempt to mediate between the angry students and the City defendants.  Plaintiff spoke to Jacoby and Dahlgren about resolving the dispute, and tried to calm down the more angry students.

Peoples became worried that the situation was getting out of control and called 9-1-1.  Peoples told the dispatcher that he had been trying to get students to clean up their mess and that students had been pushing a parks employee.

Defendant Daniel Steeves, a Clackamas County Deputy Sheriff, arrived about three minutes later.  The gate had been closed no more than a few minutes.  The City defendants had no role in the subsequent events leading to plaintiff's arrest by defendant Sergeant Kim Klusmann.

## II.  Standards

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material.  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The court should resolve reasonable doubts about the existence of an issue of material fact against the moving party.  Id. at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party.  Id. at 630-31.

## III.  Discussion

### A.  Fourth Amendment Claim

Plaintiff contends that the City defendants violated his Fourth Amendment rights by closing the gate and preventing him

from leaving the park.

### 1.  Elements of a Fourth Amendment Claim

A state official may be personally liable under 42 U.S.C. §
1983 if the official acted under color of state law in depriving
the plaintiff of a federal right.  Romano v. Bible, 169 F.3d
1182, 1185-86 (9th Cir. 1999).  The Fourth Amendment protects the
"right of the people to be secure in their persons, houses,
papers, and effects, against unreasonable searches and seizures."
To show that an official has violated the Fourth Amendment, a
plaintiff must show that a search or seizure occurred, and that
the search or seizure was unreasonable.  See Brower v. County of
Inyo, 489 U.S. 593, 599 (1989).

### 1.  Seizure

The City defendants first contend that plaintiff was not
seized for Fourth Amendment purposes because the parking lot gate
was not locked and plaintiff could walk past the gate.  A Fourth
Amendment seizure occurs only "when there is a governmental
termination of freedom of movement through means intentionally
applied."  Id. at 597 (emphasis omitted).

Here, the City defendants have failed to establish as a
matter of law that plaintiff was not seized.  A seizure occurs
when, in light of all the facts, a reasonable person would have
believed that he was not free to leave.  See United States v.
Faulkner, 450 F.3d 466, 469 (9th Cir. 2006).  The City defendants

7  - OPINION AND ORDER

intentionally prevented plaintiff from leaving, at least by car, and told plaintiff that he would not be allowed to leave until the litter was picked up.

In Faulkner, the court addressed a similar issue.  There, a federal park ranger was stopping cars at an information center near the entrance to a recreational area.  The purpose of the information center was to notify visitors of new regulations and to provide a free litter bag.  The information center consisted of orange traffic cones, a stop sign, a uniformed park ranger, and an official vehicle with a siren and light bar parked next to the roadway.  The stops generally lasted only about twenty seconds.  When the defendant in Faulkner stopped at the information center, the park ranger noticed an open container of alcohol and eventually arrested the defendant.  The Ninth Circuit held that the defendant had been seized for Fourth Amendment purposes.  Id. at 469-70.

Unlike Jacoby and Peoples, the park ranger in Faulkner was an armed, commissioned law enforcement officer.  However, I conclude that there are issues of material fact whether the City defendants made a sufficient show of authority to constitute a seizure by closing the gate and telling plaintiff that he could not leave until the trash was picked up from the picnic area. The City defendants have not shown as a matter of law that a reasonable person in plaintiff's position would have believed

that he was free to leave.  See Faulkner, 450 F.3d at 470.

   **2.  Reasonableness**

   The City defendants next argue that if a seizure occurred, it was not unreasonable.  I agree.  In addressing this issue, I will assume that a seizure occurred.

   In evaluating the reasonableness of the seizure, I must determine whether the City defendants' primary purpose in closing the gate was to advance a general interest in crime control.  If so, the seizure would be invalid.  If not, I must determine whether the seizure was reasonable.  See Faulkner, 450 F.3d at 470.

   In Faulkner, the court determined that the primary purpose of the information center was to notify visitors of new regulations and to hand out free litter bags.  The court noted that "curtailment of littering, illegal fires, and driving while intoxicated serves a purpose beyond the general interest in crime control."  Id. at 471.  One of the main reasons for the prohibition of alcohol was that 70% of the litter consisted of beer bottles.

   Here, the City defendants' main purpose for closing the gate was to allow Peoples to talk to park users about littering, with the goal of reducing littering and other problems.  There is no evidence that the City defendants intended anything more than this.  I conclude that the City defendants' primary purpose "was

9  - OPINION AND ORDER

not to advance the general interest in crime control, but to
protect the use and enjoyment of the [park]."  Id.

The next question is whether the seizure was reasonable.
"The 'touchstone of the Fourth Amendment is reasonableness,' and
the proper function of the Fourth Amendment 'is to constrain, not
against all intrusions . . . but against intrusions which are not
justified in the circumstances, or which are made in an improper
manner.'"  United States v. Willis, 431 F.3d 709, 714 (9th Cir.
2005) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991), and
Schmerber v. California, 384 U.S. 757, 768 (1966)).  The court
should weigh the gravity of the public concerns served by the
seizure, the degree to which the seizure advances the public
interest, and the severity of interference with individual
liberty.  Faulkner, 450 F.3d at 472.

Here, I conclude as a matter of law that the City
defendants' actions were reasonable.  While preventing littering
may not be the highest law enforcement priority, it is
nonetheless important to maintaining a public picnic area.  The
brief seizure here advanced the public interest, and the
interference with plaintiff's liberty was not severe.

### 3.  Qualified Immunity

For purposes of possible appeal, I address defendants'
argument that even if the seizure was unreasonable, they are
entitled to qualified immunity.

"When government officials assert the defense of qualified immunity to an action under § 1983, a court evaluating the defense should first determine whether the plaintiff has shown the deprivation of a constitutional right." Sonoda v. Cabrera, 255 F.3d 1035, 1040 (9th Cir. 2001) (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)) (footnote omitted). If the alleged facts, taken in the light most favorable to the plaintiff, would establish a constitutional violation, the court then must determine whether the right was clearly established at the time of the alleged violation. Id. If the right is clearly established, the official then must show that a reasonable officer could have believed, in light of settled law, that he was not violating the clearly established right. Carlo v. City of Chino, 105 F.3d 493, 500 (9th Cir. 1997). Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, assuming that the Fourth Amendment right at issue was clearly established, I conclude that a reasonable officer in the shoes of either Jacoby or Peoples could have believed that the stop at issue did not violate plaintiff's Fourth Amendment rights.

**B.  False Imprisonment Claim**

Plaintiff brings a state law claim for false imprisonment

against the City.

To establish a claim for false imprisonment, the plaintiff must show that (1) the defendant confined the plaintiff; (2) the defendant intended the act that caused the confinement; (3) the plaintiff was aware of the confinement; and (4) the confinement was unlawful.  See Hiber v. Creditors Collection Service, 154 Or. App. 408, 413, 961 P.2d 898, 901 (1998).

Here, the confinement, if any, was lawful, so the City is entitled to summary judgment on this claim.

### CLACKAMAS COUNTY DEFENDANTS' SUMMARY JUDGMENT MOTION

### I.  Background

Deputy Steeves was the first officer dispatched to the "disturbance" at Memorial Park.  The 9-1-1 operator told Deputy Steeves that twelve juveniles were pushing around a park employee in a dispute over cleaning up garbage.  The operator told Deputy Steeves that she had heard yelling in the background during Peoples's call.  When Deputy Steeves asked whether an assault was occurring, the operator replied, "shoving, pushing around, yes." The dispatcher stated that about six vehicles were locked in the park, that there were no weapons, and that the juveniles did not appear to be drunk or high.

When Deputy Steeves arrived at the park, the gate was closed and Sullivan's car was parked directly behind the gate.  Several students were upset and said they wanted to go to class.

12 - OPINION AND ORDER

According to plaintiff, Deputy Steeves told the students, "All of
you need to just be quiet and get back to your cars."  Freece
Depo. at 42.  Plaintiff testified at deposition that he
approached Deputy Steeves and said, "we're trying to start our
communications between the two groups here, we're trying to keep
it a nonconfrontational tone."  Id.  Deputy Steeves did not want
to talk to plaintiff and walked towards Jacoby and Peoples.

   At this time, Sergeant Klusmann arrived and talked to Deputy
Steeves.  Deputy Steeves pointed to plaintiff, and told Sergeant
Klusmann that he should talk to plaintiff.  Deputy Steeves did
not explain to Sergeant Klusmann why plaintiff would be a person
of interest.

   Sergeant Klusmann stated in his report that he understood
from talking to Deputy Steeves and Dahlgren that plaintiff "had
been part of the altercation and had been one of the most vocal."
However, Deputy Steeves explained at his deposition why he told
Sergeant Klusmann to talk to plaintiff: "I point[ed] out
[plaintiff], and told [Sergeant Klusmann] that he probably wants
to talk to [plaintiff] first, since initially [plaintiff] had
been calm and, you know, understanding . . . ."  Steeves Depo. at
66-67.  Dahlgren stated at his deposition that until Deputy
Steeves arrived, plaintiff had been acting as a mediator,
"demonstrat[ing] significant leadership."  Dahlgren Depo. at 56.
Dahlgren stated that the situation had calmed down considerably

13 - OPINION AND ORDER

when Deputy Steeves arrived.  Dahlgren stated that it was very
frustrating to him that plaintiff had done "such a good job,"
only "to have it all dissolve into a series of insults."
Dahlgren Depo. at 77.

Sergeant Klusmann walked over to plaintiff and took
plaintiff's arm.  According to plaintiff, Sergeant Klusmann "just
said, 'You,'" and grabbed [plaintiff] by the arm."  Freece Depo.
at 45.  Plaintiff stated that he was confused by Sergeant
Klusmann's conduct.  Plaintiff stated that when he asked, "What
are you doing?," Sergeant Klusmann replied, "I'm searching you."
Id.

Sergeant Klusmann states that he told plaintiff that he
wanted to talk to him, and that because of the noise, he gestured
to plaintiff.  Sergeant Klusmann states, "I cupped my hand under
his elbow in a manner that I would use to help someone crossing
the street."  Klusmann Decl. at 3.  Sergeant Klusmann describes
this as "an effective way to tell if someone I am escorting is
about to make a sudden move to either attack me or run away."
Id.  Sergeant Klusmann states that this technique is not a "pain
compliance hold."

Plaintiff did comply with Sergeant Klusmann's request that
he walk to the patrol car.  However, while he walking with
Sergeant Klusmann to the patrol car, he called out to the other
students that he was being singled out.  Sergeant Klusmann states

14 - OPINION AND ORDER

that this caused other students to be more vocal and caused him
to worry about his own safety.  Sergeant Klusmann describes
plaintiff as "a suspect in a crime of violence."  Klusmann Decl.
at 5.

As plaintiff and Sergeant Klusmann walked towards the patrol
car, Sergeant Klusmann asked plaintiff for permission to do a
pat-down search.  He told plaintiff that he was worried about his
safety.  He now characterizes the other students as "not overtly
hostile," but "vocal and not under control."  Klusmann Decl. at
5.  In his report of the incident, Sergeant Klusmann stated that
at first other students occasionally shouted their displeasure
about being detained for "nothing," but did not seem hostile or
violent.

Plaintiff refused to consent to a pat-down search, which
Sergeant Klusmann states made him more worried that plaintiff was
concealing a weapon.  When plaintiff refused a command to submit
to the search, Sergeant Klusmann thought that he "had probable
cause to arrest plaintiff for interfering with a peace officer."
Id.

Plaintiff testified at his deposition that he did not
understand why Sergeant Klusmann had singled him out.  When
Sergeant Klusmann ordered him to put his hands on the hood of the
patrol car, plaintiff asked, "What's going on?"  According to
plaintiff, at that point Sergeant Klusmann repeated the order to

15 - OPINION AND ORDER

put his hands on the hood, and "grabs me by the neck and forcefully slams my face into the hood of the police car." Freece Depo. at 50. Plaintiff characterizes his conduct not as a willful refusal to consent but as the result of his confusion about being taken aside and searched. Sergeant Klusmann contends that "plaintiff did not appear to be confused by my request that he submit to a pat-down search." Klusmann Decl. at 6.

Sergeant Klusmann ordered plaintiff to place his hands on the patrol car. Plaintiff stated that he had a right not be searched, and yelled out to the other students that his rights were being violated. Sergeant Klusmann states that he thought plaintiff was trying to incite the other students to free him from Sergeant Klusmann.

Sergeant Klusmann then forced plaintiff to comply with the search, grabbing plaintiff's right wrist and placing it on the car. Sergeant Klusmann is the about same height as plaintiff but outweighed him by 100 pounds. Sergeant Klusmann states that he grabbed the neck of plaintiff's clothing "to gain leverage to place him over the hood of the car." Klusmann Decl. at 6. He then handcuffed plaintiff, with assistance from Deputy Steeves and another deputy, and placed plaintiff in a patrol car. After deciding that the other students were not going to try to free plaintiff, Sergeant Klusmann removed plaintiff from the car and performed a full custody search.

Sergeant Klusmann cited plaintiff for interference with a police officer and disorderly conduct.  The charges against plaintiff were later dismissed.

## II.  Discussion

### A.  Civil Rights Claims

#### 1.  Fourth Amendment Claim

Sergeant Klusmann contends that he is entitled to qualified immunity.

The first issue is whether, taking the facts in the light most favorable to plaintiff, Sergeant Steeves has shown as a matter of law that he did not violate plaintiff's Fourth Amendment right to be free from arrest without probable cause. See Beck v. Ohio, 379 U.S. 89, 91 (1964).  "Probable cause means more than a bare suspicion; it exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed." Graves v. City of Coeur D'Alene, 339 F.3d 828, 841 (9th Cir. 2003).  The court should examine the reasonableness of the arrest in light of the totality of the "'facts and circumstances' actually known to the officer" when he made the arrest. Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 462 (9th Cir. 1994) (quoting Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)).  Probable cause depends on "the factual and practical considerations of everyday

17 - OPINION AND ORDER

life on which reasonable and prudent men, not legal technicians,
act." Brinegar v. United States, 338 U.S. 160, 175 (1949).

I conclude that there are disputed issues of material fact
regarding whether Sergeant Klusmann had probable cause to arrest
plaintiff for interference with a police officer and disorderly
conduct. A factfinder could conclude that Sergeant Klusmann's
conduct was objectively unreasonable in violation of the Fourth
Amendment. See Wall v. County of Orange, 364 F.3d 1107, 1110-11
(9th Cir. 2004) (reversing grant of qualified immunity because
the plaintiff's deposition and declaration, if true, would show a
constitutional violation).

The next question is whether the right was clearly
established. "Whether a right is 'clearly established' for
purposes of qualified immunity is an inquiry that must be
undertaken in light of the specific context of the case, not as a
broad general proposition." Graves, 339 F.3d at 846. I conclude
that the right to be free from arrest without probable cause
under the circumstances here was a clearly established right at
the time of the events at issue. See Beck v. Ohio, 379 U.S. at
91.

The third and final question is whether a reasonable officer
could have believed under these circumstances that he was not
violating this clearly established right. A police officer who
reasonably believes that probable cause exists to make an arrest

18 - OPINION AND ORDER

is entitled to qualified immunity.  <u>See</u> <u>Palmer v. Sanderson</u>, 9
F.3d 1433, 1436 (9th Cir. 1993).

     I conclude that Sergeant Klusmann has not shown as a matter
of law that a reasonable officer in these circumstances would
have believed that probable cause existed to arrest plaintiff on
either charge.  A jury could conclude that Sergeant Klusmann
arrested plaintiff based on inadequate investigation.  It is true
that an officer's conduct should not be evaluated based on
hindsight.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).
Here, however, a factfinder could conclude that the information
known to Sergeant Klusmann when he arrested plaintiff was not
sufficient for probable cause.  <u>See</u> <u>Graves</u>, 339 F.3d at 844 ("the
heart of our probable cause assessment [is] consideration of
evidence supporting <u>individualized</u> suspicion") (original
emphasis).  If Sergeant Klusmann had asked Deputy Steeves about
plaintiff's role in the incident before arresting him, he would
have learned that plaintiff had not only not been disruptive, but
had been trying to help.  "Although a police officer is entitled
to rely on information obtained from fellow law enforcement
officers, . . . this in no way negates a police officer's duty
to reasonably inquire or investigate these reported facts."
<u>Mendocino Envtl. Ctr.</u>, 192 F.3d at 1293 n.16 (citation omitted);
<u>see also</u> <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1444 (9th Cir.
1991) (officers may have duty to investigate further based

information obtained at the scene of crime); <u>Merriman v. Walton</u>, 856 F.2d 1333, 1335 (9th Cir. 1988) (reasonable officer would have investigated further based on exculpatory information).

The facts regarding the events after Sergeant Klusmann took plaintiff by the arm are in dispute.  Sergeant Klusmann relies on plaintiff's vocal protests to bolster the argument that probable cause existed to arrest plaintiff for disorderly conduct. However, "the acquisition of probable cause during an unlawful seizure does not cure the illegality and does not constitute an independent source of probable cause." <u>United States v. DiCesare</u>, 765 F.2d 890, 899 (9th Cir.), <u>amended on other grounds</u>, 777 F.2d 543 (9th Cir. 1985).  A factfinder could determine that much if not all of plaintiff's "disorderly conduct" was a protected exercise of plaintiff's First Amendment rights.

A similar issue arose in <u>Graves</u>, where the plaintiff was arrested while protesting against an Aryan Nations parade.  The atmosphere at the parade was very tense and there had been explicit threats of violence.  The defendant officer arrested the plaintiff after the plaintiff refused to submit to a search of his backpack.  In holding that the officer lacked probable cause to arrest, the court noted:

> On appeal, [the arresting officer] Dixon asserts that [the plaintiff] Crowell aroused additional suspicions during the stop because Crowell became increasingly loud during the encounter.  But Crowell was primarily asserting his Fourth Amendment right not to be searched and was speaking loudly to generate witnesses to his

> protest.  While such behavior may have been
> discourteous or obnoxious or irritating to Dixon, we
> cannot conclude in the context of this case that
> Crowell's verbal assertion of his constitutional right
> to be free from unreasonable search, even if wrongly
> asserted, can be said to increase an officer's
> suspicion that a crime had been or was being committed
> by Crowell.

Graves, 339 F.3d at 843 n.20.  Similarly, "the law does not

permit consideration of [plaintiff's] refusal to consent to

search."  Id. at 844.

Disputed issues of material fact preclude summary judgment

on qualified immunity.

### 2.  First Amendment Claim

Plaintiff also brings a claim that Sergeant Klusmann

violated his First Amendment rights.  To prevail on this claim,

plaintiff must present evidence that Sergeant Klusmann "deterred

or chilled [plaintiff's] political speech and such deterrence was

a substantial or motivating factor in [Sergeant Klusmann's]

conduct."  Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994);

Menotti v. City of Seattle, 409 F.3d 1113, 1155 (9th Cir. 2005).

Plaintiff claims that Sergeant Klusmann arrested and

searched him because he complained that his rights were being

violated and called attention to his arrest.  I conclude that

disputed issues of material fact also preclude summary judgment

on this claim.

## II.  False Imprisonment and Battery Claims

Plaintiff brings claims for false imprisonment and battery

21 - OPINION AND ORDER

under state law.  The County seeks summary judgment on both claims.

Because there are disputed issues of material fact regarding the lawfulness of plaintiff's arrest, the County's motion for summary judgment must be denied.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

There are disputed issues of material fact regarding the County defendants' liability, and the City defendants are entitled to summary judgment.  Therefore I deny plaintiff's motion for summary judgment on liability.

### CONCLUSION

The City of Wilsonville defendants' motion for summary judgment (#50) is granted.  The Clackamas County defendants' motion for summary judgment (#48) is denied.  Plaintiff's motion for partial summary judgment (#56) is denied.

DATED this 25th day July, 2006.


        /s/ John Jelderks
        John Jelderks
        U.S. Magistrate Judge